**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

In re:

HAROON SULEHRIA,

Debtor.

Bankruptcy Case No. 25-10420 TBM
Chapter 7

—————————————————————————————————————————

**ORDER DENYING MOTION FOR LEAVE TO INTRODUCE REMOTE WITNESS TESTIMONY**

—————————————————————————————————————————

This matter comes before the Court on the "Motion for Leave to Introduce Remote Witness Testimony" (Docket No. 154, the "Remote Testimony Motion") filed by Westlake Financial Services ("Westlake Financial"), Joshua P. Friedman & Associates (the "Law Firm"), and Ignacio Gallegos ("Mr. Gallegos") (collectively, the "Westlake Parties"), the Objection thereto (Docket No. 155, the "Objection") filed by Haroon Sulehria (the "Debtor"), and the Reply filed by the Westlake Parties. (Docket No. 158.)

## I.        **Background.**

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on January 28, 2025 (Docket No. 1).  On May 1, 2025, the United States Trustee filed "United States Trustees Motion to Dismiss or Convert Chapter 11 Case Under 11 U.S.C. § 1112(b)" (Docket No. 82, the "Motion to Dismiss or Convert").  The State of Colorado and R and R, LLC, joined in the Motion to Convert (Docket Nos. 88 and 89, respectively, together the "Joinders").  Initially, the Debtor filed a "Reply in Opposition to the Motion to Dismiss or Convert" (Docket No. 87, the "Reply"), but he later withdrew the Reply (Docket No. 90).

Based on the representations made in the Motion and the Joinders, the Court entered an "Order Converting Case Under Chapter 11 to Case Under Chapter 7" (Docket No. 92) on May 16, 2025.  Harvey Sender was appointed to serve as the Chapter 7 Trustee for the Debtor's bankruptcy estate.  (Docket No. 97.)

On July 14, 2025, the Debtor filed a "Motion for Contempt Against Westlake Financial Services (Westlake Financial Svc.), Joshua P. Friedman & Associates, and Ignacio Gallegos for Violations of the Automatic Stay Pursuant to 11 U.S.C. 362" (Docket No. 115, the "Contempt Motion").  On July 28, 2026, the Westlake Parties filed an "Opposition to Motion to Determine Violation of Stay and Imposition of Sanctions" (Docket No. 127, the "Response"), which it subsequently amended (Docket No. 132, the "Amended Response").  On December 22, 2025, the Court held a non-evidentiary hearing on the Contempt Motion and the Amended Response.  (Docket No. 143.)

1

At the non-evidentiary hearing, the Debtor confirmed that the Contempt Motion was brought to address an alleged violation of the automatic stay rather than a violation of the discharge injunction. The Debtor discussed the status of the dispute and requested that the Court hold an evidentiary hearing on the Contempt Motion, arguing that the Westlake Parties had violated the stay and continued to do so, by, among other things, threatening the Debtor's professional licensing with action before an administrative board, and continuing to make collection calls to him. Counsel for the Westlake Parties[1] addressed the Debtor's claims, noting, among other things that one of the complaints on which the Debtor based the Motion was directed to the dealership — not the Debtor, and that the other had been dismissed the day after it was filed, as soon as the Westlake Parties had received notice of the bankruptcy case. (Docket No. 143.)

After hearing from the parties, the Court determined that it would need to hold an evidentiary hearing on the Contempt Motion and set the matter for a two-day evidentiary hearing commencing on June 2, 2026. (Docket Nos. 143 and 146.)

On March 18, 2026, the Westlake Parties filed the Remote Testimony Motion. Therein, the Westlake Parties move the Court to permit the Westlake Parties' two primary witnesses, Joshua P. Friedman, Esq. ("Mr. Friedman"), and Ignacio Gallegos ("Mr. Gallegos"), to attend and testify at the evidentiary hearing remotely, by means of video conferencing technology. In support of the Remote Testimony Motion, the Westlake Parties state, in relevant part:

> 2. Mr. Friedman and Mr. Gallegos are residents of the State of California, located approximately 1,000 miles from Denver, Colorado, where the Hearing will be held. Given the significant expense and logistical burden they would incur for such travel—including airfare, lodging, and time away from their professional obligations for a multi-day hearing—Respondents respectfully request the Court grant leave for Mr. Friedman and Mr. Gallegos to appear and give testimony remotely via video conference.
>
> 3. Modern video conferencing technology allows witnesses to testify clearly and effectively, while permitting the Court and all parties to observe the witnesses' demeanor and assess credibility. Courts routinely permit remote witness testimony in circumstances where, as here, the witnesses reside out of state and the cost and inconvenience of travel would be disproportionate to the issues presented.
>
> 4. No party will be prejudiced by allowing remote testimony. The Debtor and all other parties will have full opportunity to cross-examine Mr. Friedman and Mr. Gallegos, and any documentary exhibits can be shared via

---

[1] Joshua P. Friedman appeared at the non-evidentiary hearing as counsel for all the Westlake Parties.

screen-sharing technology or made available in advance to all parties.

5.     Granting this Motion will promote judicial efficiency and reduce unnecessary costs for the parties without compromising the integrity of the proceedings or the Court's ability to evaluate the testimony presented.

6.     Westlake is represented by undersigned counsel who resides in Denver and will appear in person for the Hearing.

(Docket No. 154.)  The Westlake Parties cite no statutory, rules, or case law authority in support of the Remote Testimony Motion.

In the Debtor's Objection, the Debtor states his opposition to the Remote Testimony Motion, arguing:

2.     That request should be denied. Friedman and Gallegos are not peripheral or third-party witnesses. They are named Defendants in this contested matter, they are central actors in the conduct challenged by Debtor's Motion for Contempt, and their knowledge, intent, and credibility are at the core of the issues the Court will have to decide at the evidentiary hearing.

3.     This is not a routine scheduling matter. It is a two-day evidentiary hearing on Debtor's contempt motion, where the Court will be asked to make credibility determinations concerning whether Respondents knowingly and willfully violated the automatic stay and whether contempt sanctions are warranted. In that setting, live in-person testimony remains the rule, not the exception.

4.     Respondents' motion identifies only distance, cost, and inconvenience associated with travel from Los Angeles, California lo Denver, Colorado. Those are not compelling circumstances under Rule 43(a). To the contrary, Rule 43 and the authorities interpreting it make clear that mere inconvenience, foreseeable travel, or ordinary expense do not justify dispensing with live testimony in open court.

(Docket No. 155.)  In contrast to the Westlake Parties, the Debtor cites Fed. R. Civ. P. 43, Fed. R. Bankr. P. 9017, and case law authority in support of his Objection.

On March 26, 2026, the Westlake Parties filed their Reply.  In the Reply, the Westlake Parties introduce a new argument.  They contend that "proportionality matters,"

3

and that advances in technology serve to mitigate any concerns raised by the Debtor about the Court's ability, as factfinder, to evaluate the credibility of their witnesses and representatives.  The Westlake Parties assert:  "This is not a complex commercial case with millions of dollars at stake or a criminal proceeding where liberty interests are implicated. It is a contempt hearing in a Chapter 7 consumer bankruptcy case."  Further, they argue:

> Requiring two California residents to incur the expense and burden of multi-day travel—including airfare, lodging, and time away from their professional obligations—to attend a hearing in Denver is a significant imposition that should be weighed against the actual needs of the proceeding.  The costs of compelling in-person attendance for a hearing of this nature are disproportionate to the issues presented, and the Court should consider the practical realities that govern proceedings in this Division.

The Westlake Parties note:

> [T]he Advisory Committee Notes to Rule 43 themselves contemplate that courts should consider the costs and burdens of requiring live testimony in light of all the circumstances, and the Rule vests the Court with discretion to fashion appropriate procedures. The determination is not binary. This Court can permit remote testimony while imposing whatever conditions it deems necessary to ensure the reliability and fairness of the proceedings.

## II.     Legal Discussion.

The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure both contemplate the possibility of remote testimony in limited circumstances. Fed. R. Bankr. P. 9017 incorporates Fed. R. Civ. P. 43(a) which states:

> At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise.  *For good cause in compelling circumstances and with appropriate safeguards*, the court may permit testimony in open court by contemporaneous transmission from a different location.

Fed. R. Civ. P. 43(a)(italics added.)  As the text clearly indicates, Fed. R. Civ. P. 43(a) is permissive and not mandatory."  *Eller v. Trans Union, LLC*, 739 F.3d 467, 478 (10th Cir. 2013).  Furthermore, "the rule is intended to permit remote testimony when a witness's inability to attend trial is the result of 'unexpected reasons, such as accident or illness,' and not when it is merely 'inconvenient for the witness to attend the trial.'"  *Id.* (quoting Fed. R. Civ. P. 43(a) Advisory Committee Notes).  *See also Gil-Levya v. Leslie*, 780 Fed.

Appx. 580, 587 (10th Cir. 2019) (unpublished op.) (noting that "[m]ere inconvenience doesn't satisfy [the Rule 43] standard); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 2014 WL 358866, at *4 (D. Colo. Jan. 31, 2014) ("The only basis for [the request to testify by telephone] is the inconvenience of the witnesses.  This is insufficient, especially in this case, where Predator was aware of their location in advance of trial and was not surprised by 'unexpected reasons.'"); *Vaughn v. Stevenson*, 2007 WL 460959, at *3 (D. Colo. Feb. 7, 2007) (finding lack of good cause where plaintiff asserted only that it was difficult for her to pay costs necessary to secure witnesses' attendance).

Exercising its discretion within the framework of Fed. R. Bankr. P. 9017 and Fed. R. Civ. P. 43(a), the Court denies the request of the Westlake Parties to allow Mr. Friedman and Mr. Gallegos to testify by video conference for the following reasons:

First, this Court rarely allows telephone testimony in evidentiary hearings and trials because, notwithstanding advancements in technology, it inhibits the Court's ability to assess the credibility of the witnesses.  In this case, neither Mr. Friedman and Mr. Gallegos is a minor witness expected to testify about collateral matters.  Indeed, they are party witnesses, and as the Westlake Parties state in the Remote Testimony Motion, "[the Westlake Parties'] two primary witnesses."   Further, the Debtor has indicated that he will need to cross-examine both witnesses to establish intent, an issue that hinges on credibility.  Given the circumstances, it is important that the Court be able to hear from Mr. Friedman and Mr. Gallegos in person.

Second, as the Debtor argues in the Objection, the Westlake Parties fail to show "good cause in compelling circumstances" that justifies granting their request.  In support of their Motion, the Westlake Parties offer only that they will incur travel costs and have to spend time away from professional obligations if they have to appear in person for the hearing.  But such circumstances are far from extraordinary.  To the contrary, parties to litigation routinely have to bear substantial costs, including costs of travel and lost wages, as a part of prosecuting or defending their cases.  Such costs are not unexpected or unforeseeable, and inconvenience and expense without more, are not a sufficient basis for remote testimony.  *See Eller*, 739 F.3d at 478 (finding lack of good cause where reason offered in support of motion to appear by telephone was that it was inconvenient for witness to attend); *Predator Int'l*, 2014 WL 358866 *4 (finding inconvenience of witness insufficient ground for granting motion to appear remotely); *Vaughn v. Stevenson*, 2007 WL 460959, at *3 (D. Colo. Feb. 7, 2007) (finding lack of good cause where plaintiff asserted only that it was difficult for her to pay costs necessary to secure witnesses' attendance).  While it is possible that paying such costs, being away from professional obligations,[2] and traveling would work a hardship on Mr. Friedman and Mr. Gallegos, the Westlake Parties simply do not provide the detail that would be required to allow the Court to make findings that good cause exists for allowing testimony by video conferencing service, or that such circumstances are compelling.  For example, the Westlake Parties offer no specific information about the anticipated costs of travel, nor about the stakes of the litigation before the Court, such as the amount of expected

---

[2]     The Court does not see how allowing Mr. Friedman and Mr. Gallegos to appear remotely would enable them to meet professional obligations.  Since both are either identified as having violated the stay and/or are representatives of entities alleged to have violated the automatic stay, the Court would expect them to be present throughout the evidentiary hearing.

damages that the Debtor claims to have suffered.  The Court suspects that the Westlake Parties likely have spent more in attorneys' fees in filing the Remote Testimony Motion and Reply than the likely cost of commercial air transportation.

Third, the Westlake Parties have not done enough to demonstrate that the proposed video testimony will be accompanied by the kind of "appropriate safeguards" required by Rule 43.  In an order denying a request to provide telephone testimony, Judge Krieger of the United States District Court for the District of Colorado explained:

> The Committee notes [to Rule 43] indicate that such safeguards must: (i) ensure accurate identification of the witness; (ii) protect against influence by persons present with the witness; and (iii) assure accurate transmission of the testimony. The Court is obligated to ensure that all testimony is made in open court, under oath, and that there is a full opportunity for cross-examination.  . . .  Absent appropriate safeguards, testimony by telephone can suffer from several deficiencies. For example, to assure accurate identification of the witness and protection against improper influence of that witness, this Court has required a notary public be present at the remote location to identify and swear the witness and to subsequently affirm that no one else was present during the witness' testimony.  Where documents are to be identified by the witness—such as in this case— adequate precautions require that two identical sets of documents be available: one to the witness in the remote location, and one in the courtroom. Although careful and detailed preparation in advance can, address these problems, the Plaintiff has not identified what means she proposes to employ to do so.

*Vaughn v. Stevenson*, 2007 WL 460959, at *3 (internal citations omitted).  Here, while the Westlake Parties propose that the Court "implement any safeguards it deems appropriate, including requiring witnesses to be in a controlled environment, on camera at all times, without access to off-screen materials, and subject to the same oath and penalties as any in-person witness," the Westlake Parties do not provide any information about the scope or duration of each witness's testimony such that the Court cannot assess the adequacy of the proposed safeguards.  And the Westlake Parties leave it to the Court to craft safeguards to ensure that the witnesses do not have access to off-screen materials while being able to view all exhibits (including rebuttal exhibits not exchanged in advance of trial), and what to do in the event that Court's video conferencing technologies fail.

In sum, the Court cannot find that the Westlake Parties have shown that the costs of requiring their party representatives and witnesses to appear in person at the trial are so burdensome as to outweigh the benefits of in person testimony.  And, the Westlake Parties have not met their burden under Fed. R. Civ. P. 43(a) as incorporated by Fed. R. Bankr. P. 9017.

### III.        Conclusion.

Having considered the arguments of the parties, the Court finds that the Westlake Parties have not adequately demonstrated that good cause exists to allow them to present the testimony of party witnesses Mr. Friedman and/or Mr. Gallegos by remote means.  Thus, the Court DENIES the Remote Testimony Motion.

DATED this 7th day of April, 2026.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge